IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CHRISTOPHER BAILEY,**

      **Plaintiff,**

**v.**                                                                 **CIVIL ACTION NO. 2:18cv37**
                                                                         **(Judge Bailey)**

**WARDEN JENNIFER SAAD;**
**MICHAEL WEAVER, HAS; A**
**WILSON; EDDIE ANDERSON, MD;**
**IAN CONNERS; J.F. CARAWAY,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### Procedural History

Plaintiff initiated this action on March 13, 2018, by filing a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. ECF No. 1. However, because he was raising claims regarding his medical care, he was sent a Notice of Deficient Pleading [ECF No.2] which advised him that he must complete and file a <u>Bivens</u>[1] complaint. On April 23, 2018, the Plaintiff filed his court-approved <u>Bivens</u> complaint together with a Motion for Leave to Proceed *in forma pauperis* ("IFP") and ledger sheets. ECF Nos. 5-7. On April 24, 2018, the Plaintiff paid the $400 filing fee. ECF No. 9. Accordingly, on April 30, 2018, the Plaintiff's IFP motion was denied as moot. ECF No. 11. Upon review of a supplement filed on April 27, 2018, which included an indication that he had filed an administrative tort claim with the Bureau of Prisons ("BOP"), which was denied on October 23, 2017, it appeared that the Plaintiff might be attempting to pursue a complaint pursuant to the Federal Tort Claims Act in addition to his <u>Bivens</u> complaint.

---

[1] <u>Bivens v. Six Unknown Named Agents of the Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. § 1983 and authorized suits against federal employees in their individual capacities.

1

Therefore, on April 30, 2018, the Plaintiff was sent a Notice advising him of the potential consequences of pursuing both with an election form to indicate his intent. ECF No. 13. On May 9, 2018, the Plaintiff filed the election form indicating that he wished to pursue only a claim pursuant to Bivens. ECF No. 15. On May 10, 2018, former Magistrate Judge James E. Seibert entered an Order advising the Plaintiff of the requirements of Rule 4m of the Federal Rules of Civil Procedure and directing the Clerk of Court to forward to the Plaintiff 60 day summonses for the individual defendants and the United States Attorney as well as Attorney General of the United States. ECF No. 16. On August 3, 2018, the Defendants filed a Motion to Dismiss or, in the alterative, Motion for Summary Judgment. ECF No. 28. A Roseboro Notice was issued on August 8, 2018. ECF No. 32. To date, the Petitioner has not responded. This case is before the undersigned for a Report and Recommendation on Defendants' dispositive motions.

## Contentions of the Parties

A. Complaint

In his complaint, the Plaintiff alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment. More specifically, he alleges that in January of 2016, he began to suffer from hemorrhoids and an anal fissure. He further alleges that although an outside physician recommended surgery to correct his condition, a request to approve surgery was denied when the Mid-Atlantic Regional Office determined that surgery was not necessary and recommended conservative alternative treatment. For relief, the Plaintiff seeks an order directing the Defendants to schedule and pay for the corrective surgery and award him $500,000 for medical malpractice, $500,000 for intentional emotional distress and $500,000 for mental anguish.

B. <u>Motion to Dismiss or, in the Alternative, for Summary Judgment</u>

In their motion to dismiss or, in the alternative for summary judgment, the Defendants maintain that the complaint should be dismissed for improper service of process because the Plaintiff failed to serve any of the individually named defendants with the complaint. In addition, the Defendants argue that the Plaintiff's claims should be dismissed because he cannot establish an Eighth Amendment violation. Finally, the Defendants contend that they are entitled to qualified immunity.

**Standard of Review**

A. <u>Motion to Dismiss</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir.1993); <u>See Also</u> <u>Martin</u> at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief."  <u>Conley</u> at 45-46.  In <u>Twombly</u>,

3

the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly at 554-55. Therefore, for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003).  In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" to meet the plausibility standard and survive dismissal for failure to state a claim.  Id.

    Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520-1 (1972) (per curiam); Erikson v. Pardus, 551 U.S. 89, 94 (2007); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal

arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

 B. Motion for Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of

evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.   To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson at 248.  Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587.

## Analysis

### A. Service of Process

Although the Plaintiff is an inmate confined within a BOP facility, he paid the $400 filing fee in lieu of pursuing *in forma pauperis* status. Therefore, he was responsible for proper service of the complaint on the Defendants as opposed to being entitled to service by the United States Marshal.  Accordingly, the Plaintiff was issued an Order on May 10, 2018, advising him of the requirements of Rule 4(m) of the Federal Rules of Civil Procedure.

Rule 4(e) governs service of process on individuals and provides that service may be effected by

 (1) Delivering a copy of the **summons and complaint** to the defendant personally; or

 (2) By leaving a copy of the **summons and complaint** at the defendant's home or usual place of abode with a person of suitable age and discretion residing therein; or

>  (3) By delivering a copy of the **summons and complaint** to an agent authorized by appointment or law to receive service of process; or
>
>  (4) By following the law for service of process in the state in which the district court sits.

(emphasis added). Federal Rule of Civil Procedure 4(c)(1) provides that a summons "must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)."

In the instant case, the Plaintiff did not provide the individually named defendants with a copy of the complaint, but instead, served each with only a summons. Accordingly, the Plaintiff's complaint could be dismissed pursuant to Rule 12(b)(5). However, the individual Defendants have suffered no prejudice as the result of the Plaintiff's failure to serve each with a copy of he complaint. Moreover, a substantive response has been filed regarding the merits if the Plaintiff's complaint, and It would be a waste of judicial resources and time to dismiss this matter on a technical deficiency.

B. **Defendants Jennifer Saad, Michael Weaver, J.F. Caraway and Ian Conners**

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001) (internal citation omitted). Therefore, to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3d Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good,

7

423 U.S. 362 (1976).  Because vicarious liability is inapplicable to Bivens and Section 1983 suits, a plaintiff must plead that each government-official, through the official's own individual actions, has violated the Constitution. Ashcraft v. Iqbal, 556 U.S. 662 (2009). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own conduct." Id. at 1948-49.

With respect to Warden Saad, the Plaintiff alleges in his form complaint that she is responsible for her staff. In his originally filed habeas petition, he alleged that she had direct knowledge of all the claims he is raising because he filed several administrative grievances to which she responded. With respect to M. Weaver, the Plaintiff alleges that he is the health service administrator and is responsible for the medical department and staff. With respect to Ian Connors, who is identified as the Administrator of the National Inmate Appeals, he alleges that he did not adequately address the complaint when given the opportunity. Finally, with respect to J.F. Caraway, who is identified as Director of the Mid-Atlantic Region, the Petitioner alleges that he did not adequately investigate the claims and denied surgery. Therefore, the Plaintiff asserts that those persons had supervisory authority over the alleged violators and that they should have done something to prevent the alleged violations of his rights. In Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations."  In so finding, the Court recognized that "[s]upervisory liability

based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id.  However, the plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs.  Id.  Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice.  Id.

In this case, Plaintiff has not provided any evidence that these Defendants tacitly authorized or were indifferent to an alleged violation of his constitutional rights. Instead, it appears that those defendants simply failed to grant Plaintiff relief during the administrative process.  However, an administrator's participation in the administrative remedy process is not the type of personal involvement required to state a Bivens claim.  See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003). Moreover, in reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. Thus, even assuming these supervisory defendants had notice of Plaintiff's administrative grievance regarding his medical needs, it does not rise to the level of personal involvement for liability in this suit.  See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Dunn v. Stewart, 2012 WL 6963923, *5 (N.D.W. Va. 2012); Sanders v. O'Brien, 2011 WL 2972089, *10 (N.D.W. Va. 2011); DeBerry v. Gilmer, 2010 WL 3937956, *6 (N.D.W. Va. 2010). Accordingly, the Plaintiff cannot maintain a Bivens claim against either Saad, Weaver, Caraway or Connors, and the Plaintiff's complaint against these supervisory defendants should be dismissed.

## C. Deliberate Indifference

In the instant case, there is no dispute that the Plaintiff has hemorrhoids and an anal fissure. Hemorrhoids are swollen and irritated veins in the rectum and anus area. Individuals with hemorrhoids may have symptoms such as discomfort, itching or pain around the anus, or blood on toilet paper or in the toilet bowel after a bowel movement. Hemorrhoids often heal without treatment. While surgery is an option, hemorrhoid treatment starts with over-the-counter products such as creams or ointments, as well as lifestyle changes like increasing fiber intake to reduce constipation. Over-the-counter medicine like acetaminophen and ibuprofen can help with pain and soreness. To soothe pain and itching, and to reduce swelling in the area and relax the sphincter muscle, sitz baths are recommended. ECF No. 28-2 at p. 8.

An anal fissure is a tear in the lining of the anus and is usually caused by passing large or hard stools. An anal fissure may cause pain and bleeding during and after bowels are moved. Most anal fissures heal on their own with self-care. Treatment typically consists of eating a fiber rich diet or taking fiber supplements or laxatives to avoid constipation and sitz baths. ECF No. 28-2 at p. 8.

The Eighth Amendment protects prisoners from punishments which "'involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). These principles apply to the conditions of confinement and require that the conditions within a prison comport with "contemporary standard[s] of decency" to provide inmates with "the minimal civilized measure of life's necessities." Id. at 347; See also Farmer v. Brennan, 511

U.S. 825, 832 (1994) (explaining that both the treatment of prisoners and the conditions of their confinement are subject to scrutiny under the Eighth Amendment).

To establish a violation of the Eighth Amendment with respect to medical care, an inmate must prove two elements. See Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). First, the inmate must objectively prove that the deprivation of medical care was "sufficiently serious." Id. Second, the inmate must subjectively prove that prison staff acted with a "sufficiently culpable state of mind." Id.

The objective element is satisfied by proof of the inmate having a serious medical need. Id. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). A serious medical need can also exist if a delay in treatment would cause a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[2]

---

[2] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). Arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2nd Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the Estelle standard. Chance v.

The subjective element is satisfied by showing deliberate indifference by prison staff. Johnson, 145 F.3d at 167. The Fourth Circuit has summarized what constitutes deliberate indifference:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. Nevertheless, mere negligence or malpractice does not violate the eighth amendment.

Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990) (citations omitted). Furthermore, so long as the medical treatment given is adequate, the fact that an inmate would have preferred a different type of care does not constitute deliberate indifference. Chance v. Armstrong, 143 F.3d 698, 703 (2nd Cir. 1998). Similarly, the fact that other medical professionals would have pursued a different type of treatment does not, by itself, establish deliberate indifference. Hanson v. Smith, 9 F.3d 1557 (10th Cir. 1993). Accordingly, deliberate indifference is "generally not found when some significant level of medical care has been offered to the inmate." Atwater v. Gabriel, 2012 WL 750754 (M.D.Pa. 2012).

Here, even if Plaintiff's hemorrhoids and anal fissure constitute a serious medical problem, thus satisfying the objective element, the medical records establish that he has received substantial and adequate care. Therefore, the Plaintiff cannot satisfy the subjective component, and he fails to establish an Eighth Amendment violation.

---

Armstrong, 143 F.3d 698, 702 - 703 (2nd Cir. 1998). A degenerative hip a serious condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2nd Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978).

The Plaintiff first reported complaints about rectal bleeding on March 25, 2016. He indicated that for the last month he had noticed blood in his stool and that he had purchased Tuck pads and hemorrhoid ointment in the commissary, but his condition continued to get worse. The Plaintiff was examined, and hydrocortisone acetate suppositories were prescribed. ECF No. 29-1 at pp. 70-71. His treatment continued through at least May 22, 2018. As detailed in the Declaration of Dr. Eddie Anderson and the accompanying 290 pages of medical records, the treatment involved interactions with the Plaintiff and medical staff on more than 30 occasions and involved testing, including a colonoscopy, and prescriptions for hydrocortisone acetate suppositories, Lidocaine Jelly 2%, stool softeners, docusate sodium capsules, magnesia citrate, enemas, sitz baths, a hemorrhoid pillow as well as over the counter pain medications. See ECF Nos. 28-2, 29-1

The undersigned recognizes that on September 12, 2016, the Plaintiff was evaluated by a community physician for a post-operative colonoscopy visit.[3] Notes from that visit indicate that the community physician's recommended plan was for lateral internal sphincterotomy and hemorrhoid banding, as well as for labs to be performed and for follow-up as needed. The notes further indicate that the community physician discussed with the Plaintiff the risks and benefits associated with these procedures, and he wished to proceed with the physician's recommended plan. ECF No. 29-1 at p. 145.

On September 16, 2016, a consultation for general surgery was initiated with a target date of October 3, 2016. The provisional diagnosis was anal fistula, hemorrhoids; failed topical, colonoscopy noted same. ECF No. 29-1 at p. 287. However, the Regional

---

[3] The Plaintiff's hemorrhoids, both internal and external, and the anal fissure were found during the colonoscopy.

Medical Director reviewed and denied the request for surgery indicating that the community physician's consult indicated an anal fissure, not an anal fistula. In addition, there was no documentation of thrombosed/prolapsed hemorrhoids and no documentation of "education of high fiber diet, sitz bath use for more than four weeks." Id. at p. 289.

On June 6. 2017, a consultation for general surgery was again ordered with a target date of August 5, 2017. ECF No. 29-1 at p. 284. On July 24, 2017, the Regional Medical Director reviewed and denied the request for surgery noting that the criteria for surgery had not been met. Specifically, the Regional Medical Director noted that he was unable to locate the purchase of or prescription for anti-inflammatory cream or suppositories within the last year and there was no exam which documented thrombosed external or prolapsed internal hemorrhoids. Id.

On August 3, 2017, another consultation for surgery was initiated with a target date of October 2, 2017. The consultation request was approved. On February 16, 2018, the Plaintiff was scheduled for surgery. However, he was not placed on NPO status and provided the appropriate bowel preparation. Therefore, the surgery had to be cancelled. ECF No. 28-2 at p. 7. The Plaintiff was again scheduled for a hemorrhoidectomy on June 18, 2018 but was not put on NPO status by custody. Medical notes indicate he was to be rescheduled for surgery on a later date when the surgeon could work him in. ECF No. 29-1 at p. 293. There is no indication whether the surgery has been performed.

While the undersigned appreciates that the surgery was twice scheduled and postponed because the Plaintiff was not provided the necessary bowel preparation, this

delay does not evidence deliberate indifference, but instead, negligence at best. Moreover, it is pertinent to note that from October 21, 2016 until December 29, 2016, the Plaintiff did not complain of problems with the fissure or hemorrhoids, which were being treated with conservative measures. In November of 2017, the Plaintiff reported that the stool softeners and enemas were "helping tremendously." Once surgery was approved on August 3, 2017, the Plaintiff never complained or reported to health service staff that the conservative treatment he was being provided was ineffective or not enough. ECF No. 28-2 at p. 9.

In conclusion, there is simply no evidence that medical defendants, Dr. Anderson or Alicia Wilson, ignored expert opinion and deliberately withheld recommended surgery. Furthermore, the medical records establish that Plaintiff was seen on multiple occasions, was monitored for progress, was prescribed medication to control his pain and was referred for consults as needed. Most cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; i.e., "no care," rather than "bad care." See e.g., Holmes v. Sheahan, 930 F.2d 1196 (7th Cir. 1991), cert. denied, 502 U.S. 960 (1991). Here, even if the undersigned concluded that the Plaintiff received "bad care," which he does not, the Plaintiff did receive care. In short, the medical records fail to establish that Plaintiff's treatment by Medical Services at FCI Gilmore was improper, let alone so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Moreover, ignoring the treatment preferences of an inmate, in this case surgery, does not constitute deliberate indifference, so long as the

15

given treatment is adequate. Accordingly, Plaintiff has failed to prove the subjective element of his Eighth Amendment claim, and his complaint is without merit.

## RECOMMENDATION

For the reasons stated above, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment [ECF No. 28] be **GRANTED**, and Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objections are made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record by electronic means. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association

with this case.

DATED: January 23, 2019

/s/ James P. Mazzone
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE